TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JERRY C. YANG
Assistant United States Attorney
Chief, Riverside Branch Office
PETER DAHLQUIST (Cal. Bar No. 285548)
Assistant United States Attorney
Riverside Branch Office
    3403 10th Street, Suite 200
    Riverside, California 92501
    Telephone:   (951) 276-6267
    Facsimile:   (951) 276-6202
    E-mail:      Peter.Dahlquist@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ED CR No. 20-162-ODW-2 |
|---|---|
| Plaintiff, | **UNITED STATES' POSITION WITH RESPECT TO SENTENCING FACTORS AS TO DEFENDANT ELMER MIRANDA BARRIOS** |
| v. | |
| ELMER MIRANDA BARRIOS, | Hearing Date:  May 23, 2021 |
| Defendant. | Hearing Time:  9:00 a.m.<br>Location:  Courtroom of the Hon. Otis D. Wright, II |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Peter Dahlquist, hereby files it Position with Respect to Sentencing Factors.

///

///

///

This Sentencing Position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 9, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

JERRY C. YANG
Assistant United States Attorney
Chief, Riverside Branch Office

 /s/ Peter Dahlquist
PETER DAHLQUIST
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant Elmer Miranda Barrios ("Defendant") pleaded guilty to conspiring to participate in a telemarketing scam which defrauded elderly victims out of hundreds of thousands of dollars from April 2019 to March 2020. He continued to participate in this scheme defrauding the elderly even after he was arrested in September 2019, charged with "grand theft from elder or dependent adult," and ordered not to contact the 71-year-old victim in that case. Defendant knowingly preyed on the elderly and his crimes demand a custodial sentence and a term of supervised release to follow. The scheme in this case, which exploited elderly victims, had devastating effects. At the same time, however, the United States agrees with the Probation Officer that Defendant was a minor participant in the overall scheme who faces the collateral consequence of deportation following completion of his sentence. As such, the United States recommends a sentence of 12 months' imprisonment, 3 years of supervised release, and a special assessment of $100.

## II.   STATEMENT OF FACTS

### A.   Facts Defendant Admitted During Change of Plea

At his change of plea hearing and in his written plea agreement, Defendnat admitted to the following facts:

> Beginning at least as early as April 2019, and continuing through March 6, 2020, in Riverside County, and elsewhere, defendant conspired and agreed with Anuj Mahendrabhai Patel ("A.M.P."), William Margarito Barrios ("W.M.B."), and others, to use the mails and interstate wires to knowingly and with the intent to defraud, devise, participate in, and execute a scheme to defraud elderly victims by means of material false and fraudulent pretenses, representations, and promises and the concealment of material facts. Defendant knew the unlawful purpose of the conspiracy and willfully joined it.

|    |    |
|---|---|
| 1 | As part of the scheme, defendant's co-conspirators would call victims |
| 2 | and would falsely claim they were government employees or law |
| 3 | enforcement officers.  Using a number of fraudulent pretenses and |
| 4 | representations, defendant's co-conspirators would convince the victims |
| 5 | that the victims' identities or assets were in jeopardy.  For example, |
| 6 | defendant's co-conspirators told some victims that the victims' social |
| 7 | security numbers had been linked to crimes and that there were warrants |
| 8 | issued by courts authorizing the arrests of the victims.  Defendant's co- |
| 9 | conspirators told the victims that in order to clear the warrants, they should |
| 10 | withdraw their savings and send cash by mail to other co-conspirators. |
| 11 | Defendant's co-conspirators would generally have victims send the |
| 12 | parcels filled with cash through shipping companies that allowed parcel |
| 13 | recipients to pick up parcels so long as the recipients had identification |
| 14 | matching the names listed on the parcel as the addressees.  Defendant, |
| 15 | W.M.B., and other co-conspirators used fraudulent identification documents |
| 16 | matching the names listed on the parcels as addressees to retrieve the |
| 17 | parcels arriving in Riverside County and elsewhere.  The conspiracy was |
| 18 | coordinated and managed from outside the United States.  As part of the |
| 19 | conspiracy, defendant received and then delivered or intended to deliver the |
| 20 | following to A.M.P.: a parcel from R.W. containing $15,000; a parcel from |
| 21 | C.A. containing $11,000; a second parcel from C.A. containing $11,000; a |
| 22 | parcel from M.T. containing $19,500; a parcel from D.R. containing |
| 23 | $10,000; a parcel from J.L. containing $60,000; and a parcel from R.G. |
| 24 | containing $30,000.  Many of the victims of the scheme were elderly and |
| 25 | vulnerable.  The total loss resulting from this scheme was more than |
| 26 | $550,000 and the loss amount that was reasonably foreseeable to defendant |
| 27 | was more than $150,000. |
| 28 | (ECF No. 138, Plea Agreement ("Plea"), ¶ 11.) |

## III. SENTENCING GUIDELINES CALCULATIONS

The United States agrees with the Probation Officer's calculations of a total offense level of 13 and a Criminal History Category of I. The Probation Officer's offense level calculation is as follows:

| | | |
|---|---|---|
| Base Offense Level: | 7 | USSG § 2B1.1(a)(1) |
| Loss Amount More than $150,000: | +10 | USSG § 2B1.1(b)(1)(F) |
| Vulnerable Victims: | +2 | USSG § 3A1.1(b)(1) |
| Mitigating Role | -3 | USSG§ 3B1.2 |
| Acceptance of Responsibility: | -3 | USSG § 3E1.1(a), (b) |
| **Total:** | **13** | |

(PSR ¶¶ 31-46.) The resulting Guidelines range based on an offense level of 13 within Criminal History Category I is 12 to 18 months' imprisonment.

## IV. UNITED STATES' RECOMMENDED SENTENCE: 12 MONTHS OF IMPRISONMENT AND 3 YEARS OF SUPERVISED RELEASE

The Sentencing Guidelines are the "starting point and the initial benchmark" for sentencing. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). After calculating the Guidelines range, the Court must consider "the nature and circumstances of the offense," and "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court should then consider the need for the sentence imposed to reflect the seriousness of the offense, afford adequate deterrence, protect the public, and to rehabilitate Defendant. 18 U.S.C. § 3553(a)(2). The Court should impose a sentence that is sufficient, but not greater than necessary, to satisfy these statutorily prescribed sentencing objectives. 18 U.S.C. § 3553(a).

A 12-month sentence is appropriate based on the serious nature of the offense. "[E]lder abuse involves the exploitation of potentially vulnerable individuals with

devastating physical, mental, emotional, and financial consequences to the victims and their loved ones[.]" Elder Abuse Prevention Act of 2017, Pub. L. No. 115-70, § 301, 131 Stat. 1212 (2017).  Most elder fraud cases go unidentified and unreported, but no less than $2,900,000,000 is stolen from elderly victims each year through financial abuse and exploitation. *Id.* "Up to half of older adults with dementia will experience abuse" and "[o]lder adults who are abused are 3 times more likely to die earlier than older adults of the same age who are not abused." *Id.*  In this case, the schemers exploited their victim's patriotic instinct by feigning they were acting with law enforcement authority, or even in some instances, with the authority of the United States District Court.  What makes elder fraud crimes particularly heinous is not only the vulnerability of the victims and the breach of trust involved, but also the victims' stage in life.  The victims usually do not have the opportunity to recover from the financial loss.  The vast majority of victims in this case have entered what should be their golden years, having worked hard to save for their retirement.  But instead, they were duped out of their hard-earned savings by the conspiracy that Defendant participated in.  The seriousness of this scheme and its devastating impact cannot be overstated, and that is why the United States sought a significant sentence for the most culpable defendant.

On the other hand, in mitigation, Defendant played a small part in the scheme.  He was a courier, and based on the evidence available, it does not appear Defendant made substantial profits from his role.  Additionally, Defendant will almost certainly be deported following his release.  (PSR ¶¶ 75, 89.)  As he acknowledged at his change of plea hearing, his conviction in this case makes it "practically inevitable and a virtual certainty" that he will be removed or deported from the United States.  (Plea ¶ 10.)

While this information weighs in favor of leniency at sentencing, it is nonetheless important that the Court impose a meaningful custodial sentence in this case. Specifically, a custodial sentence of 12 months is warranted for Defendant because, among other reasons, he continued to participate in this scheme after being arrested and

notified of the nature of the scheme. Indeed, Defendant used a fraudulent identification card to retrieve a parcel with $60,000 from 71-year-old victim J.L. on September 19, 2019, (Plea ¶ 10), and was charged with "GRAND THEFT FROM ELDER OR DEPENDENT ADULT," (ECF No. 15, Det'n Req. of Anuj Patel at 31). On September 23, 2019, the state court arraigned Defendant on the charges and also served him with a protective order prohibiting him from contacting victim J.L. with a year of birth in 1947. (*Id.* at 36.) Yet while that state case was pending, Defendant continued to receive parcels as part of this conspiracy. (Indictment Overt Act Nos. 27 & 31; Plea ¶ 10; PSR ¶ 28.)

In sum, a 12-month sentence will protect the public from further crime and to reflect the seriousness of exploiting elderly victims. At the same time, a sentence beyond 12 months, while appropriate for the lead defendant—who was a supervisor, money launderer, and who is a naturalized citizen and therefore is not facing deportation—is not necessary to satisfy the objectives of 18 U.S.C. § 3553(a).

## V. TERM OF SUPERVISED RELEASE IS APPROPRIATE

The Sentencing Guidelines advise that sentencing courts ordinarily should not impose a term of supervised release for aliens who are likely to be deported after a period of imprisonment. *See* U.S.S.G. § 5D1.1(c). The commentary provides that "[t]he court should, however, consider imposing a term of supervised release on such a defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." U.S.S.G. § 5D1.1, cmt. n.5. In this case, Defendant will likely be deported following his term of imprisonment. However, for the following reasons, the government urges the Court to impose a 3-year term of supervised release.

District courts have wide latitude in imposing conditions of supervised release. *United States v. Blinkinsop*, 606 F.3d 1110, 1118 (9th Cir. 2010); *United States v. Weber*, 451 F.3d 552, 557 (9th Cir. 2006). A sentencing court even has broad discretion to impose conditions of supervised release in addition to those mandated by statute. 18

U.S.C. § 3583(d) (empowering district court to impose "any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate"). The Sentencing Guidelines, tracking the language of 18 U.S.C. Section 3553(a) concerning imposition of sentence, recognize this broad discretion:

> The [district] court may impose other conditions of supervised release to the extent that such conditions are (1) reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above and are consistent with any pertinent policy statements issued by the Sentencing Commission.

U.S.S.G. § 5D1.3(b). In this case, the imposition of supervised release would provide an "added measure of deterrence and protection" that is warranted under the facts of this case. *See* U.S.S.G. § 5D1.1, cmt. n.5. In light of Defendant's immigration status, his family ties to the United States, his prior illegal re-entries into the United States, and his continued participation in the scheme after being charged with an elder fraud crime in state court, the imposition of a 3-year supervised release term would provide an important and necessary additional deterrent to Defendant to unlawfully return to the United States and commit additional crimes in the United States. If Defendant were unlawfully to re-enter or be found in the United States committing another crime, the terms of Defendant's supervised release could be deemed violated, regardless of whether the government sought a Section 1326 prosecution.

Since the Sentencing Guidelines are advisory only, and in light of the broad discretion afforded the Court in this area, the government recommends that the Court find, consistent with the commentary to Section 5D1.1, that supervised release is appropriate under the facts and circumstances of this case. *See United States v. Apodaca,* 641 F.3d 1077, 1081 (9th Cir. 2011) (Sentencing Guidelines for supervised release are advisory only); *Blinkinsop*, 606 F.3d at 1118; *Weber*, 451 F.3d at 557. Accordingly, in addition to a 12-month term of imprisonment, this Court should impose a 3-year term of supervised release.

## VI.   CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence Defendant to a low-end sentence of 12 months' imprisonment, a 3-year term of supervised release, and a $100 special assessment.